# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2025-WC-01288-COA

**SANDRA THOMPSON**                                      **APPELLANT**

**v.**

**BOYD BILOXI, LLC**                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/10/2025 |
| TRIBUNAL FROM WHICH APPEALED: | MISSISSIPPI WORKERS' COMPENSATION COMMISSION |
| ATTORNEY FOR APPELLANT: | MICHAEL P. GORDEN |
| ATTORNEY FOR APPELLEE: | PATRICK R. BUCHANAN |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | REVERSED AND REMANDED - 06/30/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., WESTBROOKS AND EMFINGER, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1. Sandra Thompson was employed by Boyd Biloxi LLC as both a dealer and a supervisor at the casino. On July 13, 2024, Thompson filed a petition to controvert with the Mississippi Workers' Compensation Commission (Commission), seeking to recover compensation for an injury to her right shoulder that she claimed was caused by performing her duties as a dealer. The Commission dismissed Thompson's claim as barred by the two-year statute of limitations pursuant to Mississippi Code Annotated section 71-3-35(1) (Rev. 2021). Thompson appeals. For the reasons addressed below, we reverse the full Commission's order and remand for further proceedings.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

¶2. In her petition to controvert, Thompson alleged that "on or around March 5, 2024,"

she suffered a compensable injury to her "[r]ight shoulder, right upper extremity[,] and body as a whole." Thompson claimed her right shoulder injury was caused by "[r]epetitive movements dealing cards and spinning roulette" in her job as a dealer at Boyd Biloxi. Boyd Biloxi filed its answer, asserting, among other affirmative defenses, that Thompson's claim was barred by the applicable statute of limitations. Boyd Biloxi subsequently filed a motion to dismiss Thompson's claim as barred by the two-year limitations period under section 71-3-35(1). The parties conducted discovery, and on December 10, 2024, the administrative judge (AJ) held an in-person compensability hearing.

¶3.    Thompson testified at the hearing, and four exhibits were admitted into evidence, namely: Thompson's voluntary statement submitted to her supervisor on March 5, 2024 (General Exhibit 1); Thompson's medical records from Memorial Southern Coast Family Medicine dated April 27, 2021 (General Exhibit 2); Thompson's medical records from Memorial Orthopaedic Surgeons Biloxi dated July 15, 2021 (General Exhibit 3); and Thompson's medical records from Bienville Orthopaedic Specialists dated May 29, 2024 (General Exhibit 4).

¶4.    Thompson had been employed by Boyd Biloxi since February 2012, working as a dual-rate employee. In this capacity, Thompson worked as both a dealer and a supervisor. As a dealer, Thompson was required to lift her arms above her head, to the side, and extend them back and forth.

¶5.    Thompson testified that she began medical treatment in 2021 for "[p]ain, discomfort in [her] right shoulder." On April 27, 2021, Thompson saw Dr. Stephen Schepens at

Memorial Southern Coast Family Medicine. Dr. Schepens's clinic notes reflect an "ongoing" medical history of "[a]rthritis," and he noted that on this visit, Thompson "complain[ed] of right shoulder pain" that she had been having "in the posterior portion of her right shoulder. Patient denies any specific injury . . . [or] any falls." Dr. Schepens further noted that Thompson "has pain on palpation of the right posterior shoulder . . . [and] [p]ain in the same area [when] having patient lift arms above head and reaching around to her back to touch between her scapula." He prescribed a nonsteroidal anti-inflammatory drug (NSAID) to relieve the pain. During cross-examination, Thompson acknowledged that the pain described at her April 2021 doctor visit was "the same pain[] . . . that [she] reported on March 5, 2024, when [she] reported it to [her supervisor at Boyd Biloxi]."

¶6.    On July 15, 2021, Thompson was treated for her right shoulder pain at Memorial Orthopaedic Surgeons Biloxi. Thompson was seen by physician assistant Stacy Knutson and Dr. Judith Smith. Knutson's consultation notes again reflected Thompson's "ongoing" medical history of arthritis. Additionally, Knutson noted that Thompson, a "50-year-old right-hand-dominant female," was there "for evaluation of right shoulder pain present for about 1.5 years." "Patient works as a dealer in a casino and notes that overhead activities [and] frequent shoulder motion exacerbate her pain. Pain [has] grown progressively worse since onset. She denies any antecedent trauma." The consultation notes further provide that "[patient] [d]enies weakness or loss of range of motion. Denies numbness and tingling." At this office visit, Dr. Smith diagnosed Thompson with "[i]mpingement syndrome of [her] right shoulder." Thompson was given a cortisone injection. During cross-examination,

3

Thompson acknowledged that the pain discussed at this July 15, 2021 visit was the same pain she reported to her supervisor in March 2024. Thompson was then asked, "So you were linking the pain that you were having in your shoulder back in July of 2021 to your work, weren't you?" Thompson responded, "Yes, sir."

¶7. Thompson continued to receive periodic cortisone injections until early 2024, at which point she was no longer allowed additional shoulder injections. In February 2024, Thompson underwent a Magnetic Resonance Imaging (MRI) scan that revealed, for the first time, a labral tear and "biceps tendon involvement." A copy of the MRI is not in the record. The MRI results were sent to Knutson. Thompson testified that Knutson told Thompson at her follow-up appointment "that she could no longer help me, that I would have to refer to a surgeon. . . . [I]t appeared that I had a tear in or around the rotator cuff and in—I believe she said the bicep tendon or muscle, I think."

¶8. Knutson referred Thompson to Dr. Arthur Black, also associated with Memorial Orthopaedic Surgeons Biloxi, who saw Thompson in April 2024. Dr. Black confirmed the results of the MRI and also told Thompson that the type of work she did, the repetitive movements as a dealer, caused the tear damage shown in the 2024 MRI.[1]

¶9. On March 5, 2024, Thompson reported her right shoulder issues to her supervisor at Boyd Biloxi and completed a "Voluntary Statement." As reflected in that statement, Thompson reported that she was "[h]aving severe shoulder and upper arm pain. Having difficulty lifting right arm above my head, extending [it] in front and to the side or reaching

---

[1] The record does not contain any medical records relating to Thompson's March 2024 follow-up appointment with Knutson or her appointment with Dr. Black in April 2024.

4

behind." Thompson further reported that "[t]his [pain] has been ongoing for several years and [I] have seen a doctor that did an injection but it didn't help with pain. . . . The pain does not come and go, it is constant when using my right arm." At the December 2024 hearing, Thompson was asked about her voluntary statement. Thompson acknowledged that the movements she described in her statement that caused her shoulder and upper arm pain were movements that she had to do as a dealer. She further acknowledged that the pain had been ongoing since 2021.

¶10. On May 29, 2024, Thompson saw Dr. George Salloum of Bienville Orthopaedic Specialists. In reviewing Thompson's history, Dr. Salloum noted Thompson's "several[-]year history of right shoulder pain" and that she "works as a dealer at one of the local casinos." He further noted that Thompson had been seeing Knutson and received at least four cortisone injections. Thompson reported to Dr. Salloum that these injections "gave her significant improvement" at that time, and this information was corroborated by Thompson's husband, who accompanied Thompson on her visit to Dr. Salloum.

¶11. Dr. Salloum reviewed Thompson's "recent MRI" and noted that "[he] agrees with the radiology determination of the labral tear along with some thickening and possible tearing of the biceps tendon." He also confirmed Thompson's earlier diagnosis of right shoulder impingement syndrome. Dr. Salloum discussed options with Thompson. Specifically, Dr. Salloum "recommended a shoulder arthroscopy with decompression distal clavicle resection biceps tendons tenodesis and possible SLAP[2] repair if totally detached."

---

[2] Superior Labrum Anterior to Posterior.

¶12.   Following the December 2024 hearing, the AJ dismissed Thompson's petition, finding that it was barred by the two-year limitations period set forth in section 71-3-35(1), as follows:

> Claimant's testimony shows that her right shoulder pain caused her difficulty using her right arm as far back 2021. Claimant stated she had difficulty raising her right arm above her head and it interfered with her ability to sleep. Claimant's difficulties with her right arm caused her to seek medical treatment on April 27, 2021. This medical treatment consisted of steroid and anti-inflammatory medication. This was followed by a cortisone injection administered on July 15, 2021. The medical history from July 15, 2021, clearly showed that Claimant worked as a dealer at a casino and that "overhead activities and frequent shoulder motion exacerbate her pain." Lastly, Claimant testified that her right shoulder pain remained consistent from 2021 through 2024. The only change in 2024 was Claimant's inability to continue receiving periodic injections into her right shoulder. Once Claimant was unable to alleviate her shoulder pain with continued injections[,] she notified her supervisor of her shoulder pain and completed her Voluntary Statement. Claimant's Voluntary Statement[,] completed in March of 2024, truthfully stated that she had been experiencing problems with her right shoulder for several years.

¶13.   Based on these findings of fact, the AJ found that Thompson "was aware in 2021[] that she had a serious injury in her right shoulder that interfered with her ability to properly move her right arm." The AJ further found that Thompson "was aware this was a serious issue that required medical assistance[,]" and she "was aware in 2021 that her work as a dealer caused her right shoulder pain to flare up or otherwise become more problematic." In short, the AJ found that Thompson was on notice of her potential workers' compensation claim in 2021 but "did not file her Petition to Controvert until July 13, 2024. Accordingly, this claim is barred by the two-year limitations period provided by [section] 71-3-35. Claimant's Petition to Controvert is hereby dismissed."

6

¶14. Thompson petitioned the Commission for review. The Commission affirmed the AJ's dismissal of Thompson's claim, finding that in Thompson's case, "[b]y July 15, 2021, Thompson had sought treatment from an orthopedic specialist, described her pain as progressively worsening, and expressly noted that her work duties as a dealer exacerbated her symptoms. At that point, a reasonable person in her position would have recognized the compensable character of the injury." *Thompson v. Boyd Biloxi LLC*, No. 2402771-T-1096-C, 2025 WL 2934304, at *3 (Miss. Workers' Comp. Comm'n Oct. 10, 2025). The Commission concluded, "Accordingly, the two-year statute of limitations began to run no later than July 15, 2021, and expired on July 15, 2023. The Petition to Controvert[,] filed on July 13, 2024, was therefore untimely." *Id.*

¶15. Thompson appeals.

## STANDARD OF REVIEW

¶16. "The standard of review in workers' compensation cases is limited." *Thomas v. Int'l Paper Co.*, 420 So. 3d 334, 337 (¶11) (Miss. Ct. App. 2025). "The Commission's decision will be reversed only if it is not supported by substantial evidence, is arbitrary or capricious, or is based on an erroneous application of the law." *Lovett v. Delta Reg'l Med. Ctr.*, 157 So. 3d 88, 89 (¶7) (Miss. 2015).[3] That is, we will reverse the Commission's order when we find "that order clearly erroneous and contrary to the overwhelming weight of the evidence."

---

[3] Only two Commissioners signed the Commission's order, and the record contains no dissent or separate opinion by the remaining Commissioner. Nevertheless, because the Commission's order was signed by a majority of the commissioners, "[w]e must consider that decision as the order of the Commission, and we must give it the appropriate deference." *Clear River Const. Co. v. Chandler ex rel. Chandler*, 926 So. 2d 273, 276 (¶20) (Miss. Ct. App. 2006).

*Robinson Prop. Grp. Ltd. P'ship v. Newton*, 975 So. 2d 256, 259 (¶6) (Miss. Ct. App. 2007) (quoting *Barber Seafood Inc. v. Smith*, 911 So. 2d 454, 461 (¶27) (Miss. 2005)). In this regard, "[a] finding is clearly erroneous when, although there is some slight evidence to support it, . . . [we] on the entire evidence [are] left with the definite and firm conviction that a mistake has been made by the Commission in its findings of fact and in its application of the [Workers' Compensation Law]." *Id.*

## DISCUSSION

¶17. Section 71-3-35(1) provides that a workers' compensation claim must be "filed with the commission within two . . . years from the date of the injury . . . [or] the right to compensation therefor shall be barred." A compensable injury under the Workers' Compensation Law "means that the disabling injury was work connected." *Quaker Oats Co. v. Miller*, 370 So. 2d 1363, 1366 (Miss. 1979).

¶18. The limitations period pursuant to section 71-3-35(1) "does not begin to run until the claimant, as a reasonable man, should recognize the nature, seriousness and probable compensable character of his injury or disease." *Id.* (quoting Arthur Larson, *Workmen's Compensation*, § 78.41 (1978)). "The [s]upreme [c]ourt has further clarified that a 'compensable injury' is a '*disabling injury*' that occurred at work." *Thomas*, 420 So. 3d at 337 (¶12) (emphasis added in *Thomas*) (quoting *Quaker Oats*, 370 So. 2d at 1366).

¶19. Here, Thompson asserts she suffers from a "progressive injury" caused "by the repetitive movements of her job duties such as dealing cards and spinning roulette." Addressing this type of injury in particular, we explained that "if an employee suffers an

8

injury that 'initially seems insignificant, but progresses over a period of time to disabling proportions,' the statute of limitations does 'not begin to run until the *disabling characteristics of the work-related injury become known*.'" *Thomas*, 420 So. 3d at 337 (¶12) (emphasis added) (quoting *Quaker Oats*, 370 So. 2d at 1366). "The injury in this scenario is known as a 'progressive injury.'" *Id.* (quoting *Baker v. IGA Super Valu Food Store*, 990 So. 2d 254, 260 (¶19) (Miss. Ct. App. 2008)). "When latent or progressive injuries are involved, the time for filing a compensation claim under the two-year statute of limitations 'runs from the time [a] compensable injury becomes reasonably apparent.'" *Smith v. Nissan N. Am.*, 102 So. 3d 321, 323 (¶16) (Miss. Ct. App. 2012) (quoting *Tabor Motor Co. v. Garrard*, 233 So. 2d 811, 817 (Miss. 1970)); *accord Thomas*, 420 So. 3d at 338 (¶13); *Parker v. Canton Manor*, 373 So. 3d 1036, 1039 n.2 (Miss. Ct. App. 2023).

¶20. "Generally, the time when a compensable injury becomes reasonably apparent is an issue of fact for the Commission to determine." *Thomas,* 420 So. 3d at 338 (¶14). "We are bound by the Commission's findings of fact when that decision is based upon substantial evidence." *Id.*

¶21. As she asserted in the administrative proceedings below, Thompson asserts on appeal that "the nature, seriousness and probable compensable character" of her right shoulder injury "first became reasonably apparent [to her] after doctors identified a torn rotator cuff/bicep tendon . . . following her [February 2024] MRI." Thompson further asserts that she was not aware of "the [causal] relation between the torn shoulder and her work as a dealer" until she learned of it at her post-MRI follow-up appointment with Knutson in March

2024 and her April 2024 appointment with Dr. Black. Thus, Thompson asserts that her petition to controvert, filed on July 13, 2024, was timely.

¶22. The AJ and the Commission, however, found that Thompson knew of the compensable nature of her claim by July 2021; thus, her petition to controvert was time-barred. We disagree. Rather, we find that the record lacks the requisite "substantial evidence" supporting this finding. Accordingly, we are compelled to reverse the Commission's order and remand this case for further proceedings as detailed below.

¶23. In addressing this issue, we begin by noting one succinct observation: "Until an [injury] progresses into a *disabling injury*, there is no claim to file for disability benefits. The limitations period cannot run until a claim arises." John R. Bradley and Linda A. Thompson, *Mississippi Workers' Compensation* § 7:13, at 400-01 (2025 ed.) (emphasis added). Several Mississippi decisions applying this principle support its application here. *See Ga. Pac. Corp. v. Taplin*, 586 So. 2d 823 (Miss. 1991); *Pepsi Cola Bottling Co. v. Long*, 362 So. 2d 182 (Miss. 1978); *Struthers Wells-Gulfport Inc. v. Bradford*, 304 So. 2d 645 (Miss. 1974); *Miss. St. Univ. v. Panuska*, 20 So. 3d 717 (Miss. Ct. App. 2009).

¶24. In *Taplin*, for example, Louis Taplin was injured on August 8, 1983, when he fell from one platform to another concrete-supported platform below it, causing head and shoulder injuries. *Taplin*, 586 So. 2d at 825. Taplin was hospitalized for several days for a sprained neck. *Id.* Because he "continued to experience pain," and despite being told he was "all right" by his physician, Taplin consulted other physicians and was ultimately referred to Dr. Donald Fonte, who saw Taplin in April 1985. *Id.* Dr. Fonte found that "the claimant's

10

condition was caused by his August 8, 1983, accident, but his degenerative dis[c] condition would not have been discoverable by the claimant until at least a year after the accident." *Id.*

¶25.    Taplin filed a petition to controvert on August 9, 1985. The AJ and the Commission found that the limitations period on Taplin's claim did not begin to run until Taplin's April 1985 visit with Dr. Fonte; thus, his claim was not time-barred. *Id.* at 827.  The circuit court and the Mississippi Supreme Court affirmed. *Id.*   As the supreme court explained, "based on the testimony presented [to the AJ] . . . the circuit court concluded that the claimant could not have known of the compensable nature of his injuries because, although he continued to seek treatment, even his physicians remained unaware of the compensable nature of his injuries until April of 1985." *Id.*

¶26.    Particularly important to our analysis in Thompson's case, the court noted that Taplin "clearly knew that he had sustained an injury which continued to require medical attention, *but this awareness did not rise to the level of giving him notice of compensability* [before his degenerative disc condition was diagnosed]." *Id.* (emphasis added); *see Long*, 362 So. 2d at 183-85 (limitations period did not begin to run until claimant was diagnosed with a degenerative disc condition linked to a neck injury claimant suffered two years earlier; prior to this diagnosis, although claimant suffered continuing neck pain following his injury, his medical providers treated that pain with muscle relaxants and found no correlation to claimant's neck pain and any physical damage to his neck or spine).

¶27.    Similarly, in *Bradford*, the supreme court found that Myrtle Bradford's workers' compensation claim was not time-barred where Bradford "had no *compensable* injury

resulting from [a] spider bite until it became reasonably apparent that she had a disability arising therefrom." *Bradford*, 304 So. 2d at 649 (emphasis added). Bradford was bitten by a spider on December 2, 1968. *Id.* at 646. After her ankle became swollen ten days later, Bradford was treated for an infection from the poisonous bite on her ankle. *Id.* A check of her work premises "revealed the presence of several spiders, at least one of which was identified as a brown recluse spider." *Id.*

¶28. Bradford was treated for reoccurring pain from time to time over the years, but it was not until April 1971, "after being examined by two specialists in internal diseases, . . . [that] Bradford was informed that she had a vasculitis infection in the blood vessel," which had resulted from the 1968 spider bite. *Id.* at 648. In determining that Bradford's petition to controvert was timely filed, the supreme court recognized that although "Bradford knew or had reason to believe that she had sustained a spider bite, . . . there is nothing in the record to indicate that she, as a reasonable person, should have recognized the nature, seriousness[,] and probable compensable character of the injury" at that time. *Id.* at 649. Particularly relevant to our analysis in Thompson's case, the supreme court found that "[p]rior to filing a motion to controvert, [Bradford] never had reason to foresee or ascertain *that she was likely to be incapacitated from work*." *Id.* (emphasis added).

¶29. Our decision in *Panuska* is also instructive. There, Bruce Panuska incurred two head injuries from one work-related accident on March 27, 1999. *Panuska*, 20 So. 3d at 718-19 (¶¶3-8). One of the injuries was diagnosed promptly and healed, but the other injury—a

12

labyrinthine concussion[4]—was not diagnosed until over a year later. *Id.* at 719 (¶7). Panuska filed a petition to controvert on February 7, 2002, seeking workers' compensation benefits after he was diagnosed in September 2000 with the labyrinthine concussion. *Id.* at 718 (¶1).

¶30. The AJ and the Commission found that Panuska's claim was not time-barred. *Id.* This Court affirmed, observing that it was not until September 6, 2000, when Panuska was diagnosed with the labyrinthine concussion, "that Panuska learned he had suffered a permanent injury and that he would not be able to return to work." *Id.* at 721 (¶17).

¶31. Critical to our analysis in Thompson's case, the *Panuska* Court pointed out that the limitations period "is not deemed to have begun running 'if the claimant's reasonably diligent efforts to obtain treatment yield no medical confirmation of *compensable injury*.'" *Id.* at (¶16) (emphasis added) (quoting *Taplin*, 586 So. 2d at 827)). As we explained, "Mississippi law 'do[es] not penalize workers when they, with their physicians' assistance, cannot confirm that their injuries are compensable.'" *Id.* In Panuska's case, we found that "[he] had no way of knowing that he had suffered a *compensable injury until he was properly diagnosed*." *Id.* at (¶17) (emphasis added). Thus, the Court affirmed the Commission's finding "that the statute of limitations for the *labyrinthine concussion* began to run at the time it was diagnosed on September 6, 2000," and Panuska's claim, filed February 7, 2002, was not time-barred. *Id.* at (¶18). In *Tabor Motor Co. v. Garrard*, 233 So. 2d 811, 813-14 (Miss. 1970), the supreme court reversed the Commission's denial of benefits as time-barred where

---

[4] The specialist who diagnosed the condition described a labyrinthine concussion "as trauma to the inner ear that disrupts the inner ear's balance function and causes dizziness." *Id.* at 719 (¶7).

a garage foreman sustained an ear injury while welding, when a spark (later determined to be a piece of slag) fell from a cutting torch into his ear canal; he returned to work after three days but continued to have recurring physical problems. *Id*. The supreme court held that limitations period did not begin running until over two years post-injury, when, for the first time, his treaters found the slag in his ear and determined that it was causing his problems. *Id*.

¶32. Like the circumstances in these cases, in Thompson's case, overwhelming evidence shows that the *compensable character* of Thompson's right shoulder injury—i.e., the labral tear and the tear in her biceps tendon—did not become apparent at all to Thompson until her medical providers ordered the 2024 MRI that revealed this damage, she was told that it was caused by her job duties as a dealer, and Dr. Salloum recommended surgery to repair the damage.

¶33. Before her 2024 MRI, Thompson's only diagnosis was shoulder impingement syndrome, which her medical providers treated with NSAIDs and cortisone injections. Thompson, herself, reported to Dr. Salloum that these treatments "gave her significant improvement" *at that time*.[5] At no time did Thompson's treaters recommend surgery with respect to the shoulder impingement diagnosis, nor was there any indication at that time that the impingement syndrome involved any shoulder or bicep tear. Instead, as noted, it was not until after Thompson's 2024 MRI that her medical providers diagnosed her shoulder/bicep tear, advised her that it was caused by her job duties as a dealer, and recommended surgery

---

[5] It appears that by the time Thompson completed her Voluntary Statement on March 5, 2024, an injection she had previously received no longer "help[ed] with the pain."

to repair it.

¶34. In short, just as the supreme court recognized in *Bradford*, it was not until after her 2024 MRI that Thompson "had reason to foresee or ascertain *that she was likely to be incapacitated from work.*" *Bradford*, 304 So. 2d at 649 (emphasis added). And, like the claimants in *Taplin* and *Panuska*, although Thompson knew she was suffering from shoulder pain, "which continued to require medical attention, . . . *this awareness did not rise to the level of giving* [*her*] *notice of compensability*" until her 2024 MRI and diagnosis of a disabling injury, i.e., her shoulder/bicep tear requiring surgery.[6] *Taplin*, 586 So. 2d at 827 (limitations period did not begin running until claimant's degenerative disc condition was diagnosed over a year after claimant's fall); *see Panuska*, 20 So. 3d at 721 (¶17) (limitations period did not begin to run until claimant was diagnosed with labyrinthine concussion because claimant "had no way of knowing that he had suffered a compensable injury *until he was properly diagnosed*" (emphasis added)).

¶35. Boyd Biloxi asserts, however, that *Brown v. Illinois Tool Works Inc.*, 135 So. 3d 160 (Miss. Ct. App. 2013), supports the AJ's and Commission's finding that Thompson's "injury became reasonably apparent" in July 2021. We find that *Brown* is wholly distinguishable and inapplicable here.

---

[6] We recognize that a notation in Thompson's July 15, 2021 medical record provides: "Patient works as a dealer in a casino and notes that overhead activities [and] frequent shoulder motion exacerbate her pain." This notation does not change our analysis. Prior to her 2024 MRI, not even Thompson's medical providers knew she had incurred the labral tear and the tear in her biceps tendon, which constitute the *compensable—i.e., disabling*—injury in this case. Not until her medical providers explained the results of the 2024 MRI and recommended surgery did Thompson learn of this injury and its compensability.

¶36. In *Brown*, this Court affirmed the Commission's finding that Johnnie Brown's claim for benefits due to her carpal tunnel syndrome was time-barred. *Brown*, 135 So. 3d at 163 (¶¶11-12). The Commission found that the limitations period on Brown's claim began running when she visited an orthopedic surgeon, Dr. Fred Sandifer, on January 8, 2003, "for complaints of pain and numbness in both hands, which [Brown] associated with her work [packing nails] at Duo-Fast." *Id.* at 162 (¶5). Dr. Sandifer diagnosed Brown with bilateral carpal tunnel syndrome at that visit, *id.*, the same condition that formed the basis of Brown's petition to controvert filed on October 17, 2005—well over two years later. *Id.* at 163 (¶9).

¶37. In direct contrast to Brown's circumstances, Thompson's *disabling injury* in this case—her shoulder/bicep tear requiring surgery—was not diagnosed until after her 2024 MRI. As we addressed above, before this time, Thompson was diagnosed with right shoulder impingement syndrome, which her physicians treated with NSAIDs and cortisone injections. Thompson reported to Dr. Salloum that this treatment "gave her significant improvement" *at that time*, and she missed no work on account of her right shoulder pain. Not until her medical treaters diagnosed Thompson's shoulder/bicep tear following her 2024 MRI did Thompson have any reason to "ascertain that she was likely to be incapacitated from work" because it was only at that time that Dr. Salloum recommended surgery to remedy the problem and alleviate Thompson's right shoulder pain. Accordingly, we are unpersuaded by Boyd Biloxi's reliance on *Brown*.

¶38. For the reasons discussed above, we reverse the full Commission's order affirming the dismissal of Thompson's claim as time-barred, and we remand for further proceedings

consistent with this opinion.

¶39.    **REVERSED AND REMANDED.**

**BARNES, C.J., WILSON, P.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**